# United States Court of Appeals

## For the First Circuit

No. 09-1705

UNITED STATES,

Appellee,

v.

JAMES DAMON,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,* and Selya, Circuit Judge.

Virginia G. Villa, Assistant Public Defender, for appellant.
Margaret D. McGaughey, Appellate Chief with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

February 18, 2010

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH, <u>Chief Judge</u>**. Defendant James Damon pleaded guilty to the underlying offense of felon firearm possession in violation of a provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 922(g)(1). He appeals his sentence of seventy months' imprisonment and three years of supervised release. Damon received two sentencing enhancements under U.S.S.G. § 2K2.1, the sentencing guideline applicable to firearm offenses. The district court held that under U.S.S.G. § 2K2.1(a)(1), Damon had two prior felony convictions for either controlled substance offenses or crimes of violence. Damon received another enhancement under U.S.S.G. § 2K2.1(a)(1) because his offense involved three or more firearms. He challenges both enhancements. We affirm the sentence.

As to the first enhancement, Damon argues that when the Sentencing Commission used the phrase "punishable by imprisonment by a term of one year or more" to define the Sentencing Guidelines terms "felony conviction" and "controlled substance offense," U.S.S.G. § 2K2.1 cmt. n.1, it intended to incorporate the definition of that phrase in 18 U.S.C. § 921(a)(20)(B), a provision of the ACCA. The ACCA definition excludes state convictions that the state classifies as misdemeanors if they are punishable by less than two years' imprisonment. Had the ACCA definition applied, Damon would have only been sentenced based on a single prior felony conviction for a crime of violence. We hold that the Commission did not intend to use the ACCA's definition and that Damon's second

-2-

conviction was clearly a "felony conviction" for a "controlled substance offense" based on the definitions of those terms the Commission adopted.

As to the second enhancement, Damon argues that his offense did not "involve" three or more firearms, as U.S.S.G. § 2K2.1(b)(1)(A) requires, because he "possessed" only the firearm that a proxy purchased for him. He did not "possess" the other two firearms the proxy obtained for his associates, he says, because he only handled those guns briefly while he considered which gun he wanted the proxy to buy. He claims that this kind of fleeting contact does not meet the definition of "possession" under the Guideline. That, however, is the wrong question, since this enhancement does not merely apply to possession. The relevant question under the Guideline is whether, on the basis of Damon's own actions and other relevant conduct, his offense involved efforts to unlawfully obtain, distribute, or possess other firearms. Damon's involvement in his associates' simultaneous attempts to obtain the other two guns from the same pawnbroker, at the same time, and through the same proxy, is relevant conduct. We hold that Damon's offense "involved" these other two guns as well as the one he sought to obtain for himself and that the enhancement therefore applied.

-3-

I.

The uncontested facts are as follows. On October 11, 2007, Damon and two male associates, Christopher Riley and Levar Carey, all residents of Massachusetts, traveled to Frati the Pawnbrokers, a pawnshop in Bangor, Maine, to look at guns. All three men arrived at the same time, along with Katrina Wickett, a Maine resident, and another woman. The store videotape showed that Damon handled at least three guns himself, including a Springfield Armory .45 caliber pistol, an Israel Military Industries Desert Eagle 9mm caliber pistol, and a Glock .45 caliber pistol. The three men talked with one another frequently as they considered the guns and passed them around to each other. Damon and Riley had also handled firearms on a previous trip the two had made to Frati the Pawnbrokers in September 2007.

Katrina Wickett then purchased all three pistols for the men. She filled out the relevant forms while the three men looked on and paid with $400 that Damon gave her for the Springfield pistol, money from the other men, and an additional sum that Riley gave her inside the shop when the total bill exceeded the cash she had on hand. The plan was for Wickett and the men to return to her house in separate cars. Wickett kept the guns in her car.

The pawnbroker, suspicious of the sale, asked Wickett to come back in forty-five minutes, saying that she would need to address a paperwork issue before she could take the guns with her.

Wickett then left the store with Damon, Riley, Carey, and the other woman. The pawnbroker called a U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force officer, who arrived at the pawnshop in time to conduct surveillance of the store when Wickett returned, this time with only the other female accompanying her. The pawnbroker handed Wickett the three guns and she left; the ATF officer then approached and interviewed her at her home. Wickett turned the guns over to the officer and explained to both the officer and police that Damon and his two associates had arranged for her to buy these three guns for them.

Damon was arrested on August 15, 2008. He, Carey, and Riley were charged together with various firearms offenses.[1] All three men were felons. At this point, Damon had two relevant prior convictions. In 2005, he had been convicted in Massachusetts of possessing a Class D controlled substance with intent to distribute, which carried a potential sentence of two years' imprisonment under Massachusetts law. In 2006, he had also been

---

[1] The three men were charged in a five-count indictment. Count One charged all three men with conspiracy to make false statements to licensed federal firearms dealers in connection with an attempted firearms purchase. Count Two charged all three men with aiding and abetting the making of a false statement on a federal firearms form. Counts Three and Four charged Riley and Carey, respectively, with felon firearm possession. Count Five, the count at issue here, charged Damon with felon firearm possession. Counts One and Two were dismissed on the government's motion at Damon's sentencing as part of the plea agreement.

convicted of assault and battery, which carried a potential sentence of thirty months' imprisonment under Massachusetts law.

On December 1, 2008, Damon pleaded guilty to felon firearm possession. The pre-sentence report (PSR) used the 2008 version of the Guidelines and recommended a base offense level of 24 by applying U.S.S.G. § 2K2.1(a)(2), the guideline applicable to defendants who already have at least two previous felony convictions involving either a crime of violence or a controlled substance. The PSR also recommended a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), for offenses involving between three and seven firearms. The PSR then applied a two-level downward adjustment for acceptance of responsibility and an additional one-level downward adjustment at the government's request. The PSR recommended a total offense level of 23, which, in conjunction with Damon's criminal history category, corresponded to a Guidelines sentencing range of seventy to eighty-seven months' imprisonment.

The district court adopted these recommendations at sentencing and sentenced Damon to seventy months' imprisonment, the lowest Guidelines sentence, and three years' supervised release.

II.

We review questions regarding the legal interpretation of the Guidelines de novo and review challenges to the application of the Guidelines based on a sliding scale. United States v. Sicher, 576 F.3d 64, 70 & n.6 (1st Cir. 2009). The Government must show

the facts supporting an enhancement by a preponderance of the evidence.  Id. at 70.

A.        Sentencing under U.S.S.G. § 2K2.1(a)(1) for Commission of the Offense Following Two Prior Felony Convictions

Section 2K2.1(a)(2) of the Guidelines applies if "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  Application Note 1 defines a "felony conviction" as a "prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed."  U.S.S.G. § 2K2.1 cmt. n.1.  It also defines a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits," inter alia, "the possession of a controlled substance . . . with intent to . . . distribute."   Id. (giving this term its definition under U.S.S.G. § 4B1.2(b)).  The meaning of this guideline is a question of law, and our review is de novo.

Damon argues that the Sentencing Commission deliberately used the term "offense punishable by imprisonment for a term exceeding one year" in the commentary to incorporate the statutory definition of that term in 18 U.S.C. § 921(a)(20)(B), a provision

of the ACCA.[2]  Section 921(a)(20)(B) defines that term to exclude "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."  18 U.S.C. § 921(a)(20)(B).  Damon's 2006 conviction for possessing a Class D controlled substance with intent to distribute was a misdemeanor with a maximum two-year sentence under Massachusetts law.  Under Damon's interpretation of U.S.S.G. § 2K2.1(a)(2), this conviction would not count as a felony.

We reject this argument.  Congress has not required the Commission to adopt the ACCA's definition of an offense "punishable by imprisonment for a term exceeding one year" for purposes of defining a "felony conviction" or a "controlled substance offense" in U.S.S.G. § 2K2.1, nor does Damon so argue.  The plain language, context, and history of this guideline demonstrate that the Commission did not intend to adopt the ACCA definition.  Rather, the Commission used the phrase "punishable by imprisonment for a term exceeding one year" without any hidden limitations when defining a "felony conviction" and a "controlled substance offense" in the commentary to U.S.S.G. § 2K2.1.  The Commission had no

---

[2]  Damon does not distinguish between the way this language is used in the commentary definitions of a "felony conviction" and a "controlled substance offense," even though the commentary definition of a "felony conviction" does not use this phrase precisely.  Nonetheless, Damon seems to assume the phrasing is close enough that the statutory exceptions in § 921(a)(20)(B) would limit both a "felony conviction" and a "controlled substance offense."

intention to so limit these categories of offenses; when it did intend limits, it said so explicitly elsewhere in the commentary.

Damon's argument rests on the erroneous premise that when any portion of the Sentencing Guidelines uses a term that appears in a related statute defining elements of a crime, the Sentencing Commission necessarily intended to adopt that definition at sentencing. That is not the law; "similar language used in different sources of law may be interpreted differently." United States v. Giggey, 551 F.3d 27, 36 (1st Cir. 2008) (en banc). In Giggey, for instance, we held that the Sentencing Commission intended to define a "crime of violence" in U.S.S.G. § 4B1.4 differently from the way the ACCA defined a "violent felony." We so held even though the Commission modeled its definition of a "crime of violence" after the ACCA's definition of a "violent felony" and used identical language to the ACCA in part of its definition. Id. at 36.

We determine the meaning the Sentencing Commission intended to give to Guidelines terms, including whether it intended to adopt a statutory definition, by applying familiar principles of statutory construction. See United States v. Dyer, 589 F.3d 520, 524 (1st Cir. 2009).[3]

---

[3] Guidelines commentary is "akin to an agency's interpretation of its own legislative rule." Stinson v. United States, 508 U.S. 36, 45 (1993). Like the text of a Guideline, we interpret its meaning using conventional methods of statutory construction. See United States v. Almenas, 553 F.3d 27, 31-32

The plain language of the Commission's definition of a "felony conviction" in Application Note 1 clearly excludes the statutory exceptions in § 921(a)(20)(B). Application Note 1 sets three criteria for an offense to be a "felony conviction": the offender must have been an adult when the offense was committed; the conviction must be for a violation of federal or state law; and the offense must be "punishable by death or imprisonment for a term exceeding one year." U.S.S.G. § 2K2.1, cmt. n.1. Application Note 10 lists the only textual limitations to the definition of "prior felony convictions." For purposes of applying provisions including § 2K2.1(a)(2), a court can "use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)" of the Guidelines and that are counted separately under those provisions. Id. cmt. n.10. These textual limitations support our view that the Commission did not intend to include any further, implied limitations on the term.

The definition of a "felony conviction" in the commentary to U.S.S.G. § 2K2.1 also unambiguously rejects the exceptions to the term "punishable by imprisonment by a term exceeding one year" in 18 U.S.C. § 921(a)(20)(B). Section 921(a)(20)(B) exempts an offense depending on whether state law defines it as a "misdemeanor," whereas the definition of a "felony conviction" in

---

(1st Cir. 2009); see also United States v. McKinney, 520 F.3d 425, 429 (5th Cir. 2008).

U.S.S.G. § 2K2.1's Application Note 1 states that it is irrelevant whether state law "specifically designated" the offense as a felony or as something else.

Nor is there any indication in the language of U.S.S.G. § 2K2.1 that the Commission's definition of a "controlled substance offense" as, inter alia, an offense involving "imprisonment by a term exceeding one year" was meant to incorporate § 921(a)(20)(B)'s statutory exceptions. See U.S.S.G. § 2K2.1 cmt. n.1. Damon has not made any argument as to why the Commission would have intended to apply 18 U.S.C. § 921(a)(20)(B)'s exceptions only to controlled substance offenses, and there is no logical reason why that would be so.

Further, it is clear from a comparison of the Guidelines language and statutory text that the term "punishable by imprisonment for a term exceeding one year" is used differently in these contexts. The commentary to U.S.S.G. § 2K2.1 uses the phrase "punishable by imprisonment for a term exceeding one year" to define two terms used in the text of the guideline, "felony conviction" and "controlled substance offense." See U.S.S.G. § 2K2.1(a)(2). In contrast, 18 U.S.C. § 922, which sets out the elements of offenses prohibited under the ACCA, uses the phrase "crime punishable by imprisonment for a term exceeding one year" as a prerequisite for particular offenses, not to explain other terms. See 18 U.S.C. §§ 922(d)(1), (g)(1), (n). Section 921(a)(20) then

-11-

defines this phrase as a primary term used in the statute. 18 U.S.C. § 921(a)(20). These differences in usage make it implausible to assume that the Commission and Congress intended to give this phrase the same meaning.[4]

We likewise reject Damon's argument that the rule of lenity requires us to adopt his definition. The rule of lenity weighs in favor of a defendant's guideline interpretation only when substantial ambiguity as to the guideline's meaning persists even after a court looks to its text, structure, context, and purposes. See United States v. Stepanian, 570 F.3d 51, 57 (1st Cir. 2009). We have found no such ambiguity here.

B.      The Two-Level Enhancement for Offenses Involving Three to Seven Firearms under § 2K2.1(b)(1)(A)

Section 2K2.1(b)(1)(A) imposes a two-level sentence enhancement "[i]f the offense involved three or more firearms" but no more than seven. U.S.S.G. § 2K2.1(b)(1)(A). The guideline counts "only those firearms that were unlawfully sought to be

---

[4] While we rely on text and context, U.S.S.G. § 2K2.1's history also does not support Damon's argument. Damon claims that in 1991, the Commission increased base offense levels in U.S.S.G. § 2K2.1 in response to parallel changes in the ACCA, that the Commission was well aware of the ACCA's definitions, and that the Commission therefore intended not to count any crimes that the ACCA excluded. But even assuming that the ACCA was the impetus for the 1991 amendments, Damon's argument cuts too broadly. Nothing in the history of the amendments suggests that the Commission intended § 2K2.1 to operate in perfect lockstep with the ACCA. Moreover, § 2K2.1 did not, at the time, define the term "felony conviction" in the commentary, nor did it mention "crimes of violence" and "controlled substance offenses." See U.S.S.G. appx. C, amend. 374, at 186 (1997).

-12-

obtained, unlawfully possessed, or unlawfully distributed." Id. § 2K2.1 cmt. n.5. A defendant is not only responsible for the firearms he personally and unlawfully sought to obtain, possess, or distribute; he is also responsible for his relevant conduct. See id. § 1B1.3(a). "[I]n the case of a jointly undertaken criminal activity," this conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Id. § 1B1.3(a)(1)(B).

Because an offense "involving" three or more firearms is not limited to situations where the defendant personally possessed at least three firearms, we need not decide whether Damon's fleeting contact with the other two guns while in the pawnshop qualifies as "possession." That is a much thornier question. Instead, Damon was engaged in a joint criminal undertaking with Carey, Riley, and Wickett to unlawfully obtain all three guns and the effort to obtain all three guns was "relevant conduct."

Damon denies this and says there was no evidence of a common connection between his efforts to obtain a gun and Carey's and Riley's arrangements with Wickett.[5] He concedes that he and Wickett agreed to unlawfully obtain a gun for him, but says the other two men made separate agreements with Wickett. Damon claims

_____

[5] Damon also points out that the government dropped conspiracy charges against Damon and his associates. This is irrelevant; at sentencing, "relevant conduct" can include "[c]onduct that is not formally charged or is not an element of the offense of conviction." U.S.S.G. § 1B1.3 cmt. background.

he only gave Wickett money to purchase a gun for him, and that he therefore had no stake in the other men's efforts to unlawfully obtain guns for themselves.

We reject this argument. A "jointly undertaken criminal activity" means "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." Id. § 1B1.3(a)(1)(A). Courts can look to "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others" to define the scope of the joint criminal activity. Id. cmt. n.2; see also United States v. Carrozza, 4 F.3d 70, 75-76 (1st Cir. 1993).

On this record, the district court could supportably have found by a preponderance of the evidence that Damon, Carey, and Riley, all of whom were felons, were engaged in a "jointly undertaken criminal activity" to attempt to illegally obtain guns from the same pawnshop, at the same time, and through the same proxy, Wickett. The three men, all Massachusetts residents, were captured on video arriving at a pawnshop in Maine with Wickett. They talked with each other and considered guns together as Wickett stood beside them. Damon and Riley had considered these same guns together the previous month but had been unable to buy the guns themselves. Wickett purchased guns for all three men at the same time, and they all left the store together.

-14-

It is easy to infer an implicit agreement between the three men and Wickett to unlawfully seek to obtain guns, irrespective of the amount of money each man gave to Wickett toward the purchase. All three men had a common stake in using Wickett to attempt to unlawfully obtain guns for themselves. Carey's and Riley's unlawful attempts to obtain guns at the pawnshop through Wickett were not only "reasonably foreseeable" and "in furtherance" of this scheme but were the essence of the common plan with Damon.

The sentence is <u>affirmed</u>.

<u>So ordered</u>.