**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

DENNIS LEE JONES,

     Defendant-Appellant.

No. 12-4021
(D.Ct. No. 1:11-CR-00082-DB-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Dennis Lee Jones appeals his sixty-month sentence, arguing his

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentence is procedurally unreasonable because the district court enhanced his sentence two levels under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2K2.1(b)(1)(A) for relevant conduct involving three or more firearms. We exercise our jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Jones's sentence.

## I. Factual Background

On or before April 25, 2011, Dustin John, Mr. Jones, and Mr. Jones's girlfriend, Tara Rust, drove to her aunt's neighbor's home with the intent to burglarize it, after learning the occupant spent little time there. While Ms. Rust waited in her vehicle, Mr. Jones and Mr. John broke into the home and stole several items, including jewelry, coins, three rifles, a shot gun, and a safe, which they loaded into the vehicle. They returned to Ms. Rust's and Mr. Jones's home, where Mr. John was also staying. Mr. John then cut the hinges off the safe, which contained two revolvers and additional jewelry. Ms. Rust and Mr. Jones kept the jewelry, while Mr. John allegedly took the firearms to his grandmother's home. Later, based on a tip, officers recovered one of the stolen rifles from the rafters of Mr. Jones's and Ms. Rust's garage as well as the stolen jewelry in their bedroom.

## II. Procedural Background

An indictment issued, which stated in Count III that Mr. Jones and the others:

> knowingly received, possessed, concealed, stored, bartered, and sold stolen firearms, ... shipped or transported in interstate commerce, namely (1) Smith & Wesson model 300 rifle; (2) Remington, model 700, 30-06 rifle; (3) Winchester .22 caliber rifle; (4) Mossberg 12 gauge shotgun; (5) Smith & Wesson .357 Magnum revolver; and/or (6) Smith & Wesson .44 magnum revolver, knowing and having reasonable cause to believe the firearms had been stolen, all in violation of 18 U.S.C. § 922(j).

Following his arrest, Mr. Jones admitted to burglarizing the home in question and explained he took the jewelry and coins from the home, while Mr. John carried out the firearms and safe. In a written statement, Mr. Jones said, "I didn't want nothin' to do with the guns so I don't know what [Mr. John] planned to do with them." He also indicated he was not aware Mr. John had brought one of the rifles back to their home. Later, in his statement in advance of his guilty plea, Mr. Jones admitted he possessed the Smith & Wesson .357 Magnum revolver when it was removed from the safe and he physically handled it. He then pled guilty to Count III of the indictment with respect to only that firearm.

Following his guilty plea, a probation officer prepared a presentence report, calculating Mr. Jones's sentence under the applicable 2011 Guidelines. The probation officer set Mr. Jones's base offense level at twenty pursuant to U.S.S.G.

§ 2K2.1(a)(3) for possession of a stolen firearm subsequent to sustaining a felony conviction for a controlled substance offense. Because relevant conduct during the offense involved three to seven firearms, the probation officer also recommended the contested two-level offense increase under U.S.S.G. § 2K2.1(b)(1)(A). She also recommended a four-level increase under U.S.S.G. § 2K2.1(b)(6) for Mr. Jones's possession of a firearm in connection with his felony offense and a three-level reduction under U.S.S.G. § 3E1.1 for his acceptance of responsibility, resulting in a total offense level of twenty-three.

A total offense level of twenty-three, together with Mr. Jones's criminal history category of IV, resulted in a recommended advisory Guidelines range of seventy to eighty-seven months imprisonment. The probation officer also stated an upward departure may be warranted based on Mr. Jones's four additional pending state criminal cases involving significant felony offenses unrelated to the instant offense. The probation officer also pointed out Mr. Jones's extensive substance abuse, including methamphetamine use from 1993 or 1994 until his instant arrest, and the fact he presently suffers from major medical problems, including pulmonary arterial hypertension and a weak and enlarged heart, for which he is on several medications.

Mr. Jones filed a formal objection to the probation officer's inclusion of the

contested two-level increase under U.S.S.G. § 2K2.1(b)(1)(A) for relevant conduct involving three to seven firearms. While Mr. Jones admitted he participated in the burglary, he contested the increase based on his prior statement he did not want the stolen firearms, the fact he made only fleeting contact with the handgun he physically held, and his assertion he played no role in attempting to sell the firearms and did not intend to receive proceeds from their sale. In apparent reference to his constructive possession of the rifle found in the rafters of his garage, and express reference to the revolver he handled, Mr. Jones argued no reliable evidence showed he sought to obtain, possess, or distribute more than two firearms. He also asserted his diminished medical condition prevented him from carrying the safe out of the home.

At sentencing, Mr. Jones renewed his objection to the two-level enhancement. In opposition, the government argued Mr. Jones was responsible for the conduct of Mr. John and otherwise aiding, assisting, or abetting him in his possession of all the firearms. After considering the parties' arguments, the district court denied Mr. Jones's objection, finding "by a preponderance of the evidence that the government … met its burden of persuading [it] that there were three or more firearms involved" in the offense for the purpose of applying the two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A). It further stated:

I agree in particular with [government counsel] and his statement

about the Guidelines anticipating that each willing participant in this caper is responsible for what the mission was intended to do and what it actually did. Under those circumstances, I find that he is appropriately credited with an enhancement for the offense involving more than two firearms.

Before rendering a sentence, the district court also considered Mr. Jones's argument that both his lack of involvement with the firearms and serious medical condition warranted a downward variance as well as the government's argument his medical condition did not alter his capacity to re-offend, as evidenced by his additional pending state felony cases. After hearing these arguments, the district court sentenced Mr. Jones to a below-Guidelines-range sentence of sixty months imprisonment based on his "extraordinary physical impairment," even though it also found his impairment "has been largely by his own choices of health debilitating activities."

## III. Discussion

On appeal, Mr. Jones argues his sentence is procedurally unreasonable because the district court failed to make the necessary findings and misapplied the law in enhancing his sentence two levels under U.S.S.G. § 2K2.1(b)(1)(A) for relevant conduct involving three or more firearms. In support, Mr. Jones asserts § 2K2.1(b)(1)(A) requires actual, constructive, or planned possession of the firearms at issue, rather than a finding of "pure enterprise liability," "accomplice

liability," or "joint enterprise," as determined by the district court in describing it as a burglary "caper." He contends "the district court failed to make any explicit finding as to the fundamental possession issue," imposing the enhancement instead on its erroneous holding such a joint burglary caper included the theft of the multiple firearms stolen. He suggests no evidence infers they knew the house contained firearms, they were the object of the burglary, or that Mr. Jones intended to steal or possess firearms. Instead, Mr. Jones argues, the record shows he and Ms. Rust opposed having any guns in their home, which is why they took the jewelry instead of the firearms.[1]

We review a sentence for reasonableness, giving deference to the district court under an abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 802, 805 (10th Cir. 2008). Thus, we review "'all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse of discretion standard'" in which we afford substantial deference to the district court. *Id.* at 806 (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "Our appellate review for reasonableness includes both a procedural component, ... as well as a substantive component, which relates to the length of the resulting

---

[1] While irrelevant to our disposition on appeal, Mr. Jones states evidence shows he and Ms. Rust were "opposed to weapons following the death of a family member" but fails to cite to the record in support of such "evidence," nor has our review of the record disclosed such evidence.

sentence." *Id.* at 803. Here, Mr. Jones appeals only the procedural component based on his contention the district court impermissibly applied a two-level enhancement under § 2K2.1(b)(1) without finding he constructively possessed the firearms at issue.

"Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, ... relied on clearly erroneous facts, or failed to adequately explain the sentence." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). In determining whether the district court properly calculated a sentence, we review its legal conclusions de novo and its factual findings for clear error. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*). In reviewing sentencing enhancements, including the district court's factual findings, we "view the evidence and inferences therefrom in the light most favorable to the district court's determination." *United States v. Mozee*, 405 F.3d 1082, 1088 (10th Cir. 2005). "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (internal quotation marks omitted). With regard to the explanation a district court provides, it must "'state in open court the reasons for its imposition of the particular sentence'" and satisfy

us that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (quoting 18 U.S.C. § 3553(c)). While a court must provide at least a general statement of its reasons for the sentence imposed, it "'need not explicitly refer to either the § 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence.'" *United States v. Lente*, 647 F.3d 1021, 1034-35 (10th Cir. 2011) (quoting *United States v. Martinez-Barragan*, 545 F.3d 894, 903 (10th Cir. 2008)).

In addition, we give due deference to the district court's application of the Guidelines to the facts. *See Maestas*, 642 F.3d at 1319. While we give the district court deference when there is a "range of possible outcomes the facts and law at issue can fairly support," we also "will not hesitate to find abuse where a decision is either based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. McComb*, 519 F.3d 1049, 1053-54 (10th Cir. 2007) (internal quotation marks omitted). Finally, the government bears the burden of proving facts in support of a sentencing enhancement by a preponderance of the evidence, *see United States v. Keifer*, 198 F.3d 798, 800 (10th Cir. 1999), including those pertaining to relevant conduct. *See United States v. Garcia*, 411 F.3d 1173, 1177 (10th Cir. 2005).

Section 2K2.1 of the Guidelines establishes the base offense level as well as certain enhancements for offenses involving the "unlawful receipt, possession, or transportation of firearms." U.S.S.G. § 2K2.1(a) and (b). Section 2K2.1 also recommends a two-level offense increase "[i]f the offense involved three or more firearms." U.S.S.G. § 2K2.1(b)(1)(A). Commentary to § 2K2.1 states, "[f]or purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." U.S.S.G. § 2K2.1(b)(1) cmt. n.5.

"A defendant is not only responsible for the firearms he personally and unlawfully sought to obtain, possess, or distribute," but "he is also responsible for his relevant conduct" related to the offense. *United States v. Damon*, 595 F.3d 395, 401 (1st Cir. 2010). Accordingly, a district court, in deciding whether a two-level enhancement applies under § 2K2.1(b)(1), may consider the defendant's "relevant conduct," as outlined in U.S.S.G. § 1B1.3.[2] It provides the following "shall be taken into account" when determining "relevant conduct":

---

[2] "An 'offense,' as defined by the Sentencing Guidelines, includes the offense of conviction and all relevant conduct under § 1B1.3, unless a different meaning is otherwise specified." *United States v. Tagore*, 158 F.3d 1124, 1128 (10th Cir. 1998) (citing to U.S.S.G. § 1B1.3 cmt. n.1).

(1)(A) all acts and omissions committed, aided, abetted, [or] counseled, ... by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, [or] in preparation for that offense ....

U.S.S.G. § 1B1.3(a)(1)(A) and (B). Commentary to § 1B1.3 states "a defendant is accountable for the conduct (acts and omissions) of others that was both ... in furtherance of the jointly undertaken criminal activity" and "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3 cmt. n.2. In making a relevant conduct assessment, we have held the district court may consider the dismissed counts of an indictment. *See United States v. Gay*, 240 F.3d 1222, 1229 n.6 (10th Cir. 2001).

In this case, it is clear Mr. Jones, Ms. Rust, and Mr. John participated in a jointly-undertaken criminal scheme, plan, or enterprise to commit burglary of the home in question. While Mr. Jones and the others may not have known the exact contents of the home they intended to burglarize, it is evident they intended to steal and thereby illegally possess items of value and, in so doing, took jewelry, coins, and the firearms identified in the indictment. It is also evident Mr. John took the firearms in furtherance of their jointly-undertaken criminal activity, and

-11-

by participating in the burglary, Mr. Jones not only aided and abetted him in the taking of the firearms but could reasonably have foreseen Mr. John would obtain or seek to obtain firearms as items of value.[3] Indeed, Mr. Jones knew at the time the burglary was transpiring that Mr. John removed and had possession of at least four firearms from the home.

These are the grounds on which the government's argument was predicated. By expressly agreeing with that argument and further explaining Mr. Jones, as a willing participant, was responsible for the burglary caper, the district court provided a sufficient explanation for the enhancement. Moreover, we give due deference to the district court's application of § 2K2.1(b)(1)(A) to the facts and further conclude the facts and the law fairly support the district court's conclusion Mr. Jones is responsible for Mr. John's unlawful taking and possession of at least four firearms removed from the home, regardless of whether Mr. Jones knew in advance those firearms were contained in the home or did not physically remove them himself.

While this alone is sufficient for the two-level enhancement, we disagree

---

[3] Arguably, while the commentary limiting § 2K2.1(b)(1) to "firearms that were unlawfully sought to be obtained" is most likely directed to the illegal purchase of firearms, the commentary also does not limit the enhancement to exclude other conduct of unlawfully seeking to obtain firearms, such as through a burglary.

with Mr. Jones's argument he did not "constructively possess" more than two firearms. This is because Mr. Jones admitted to watching Mr. John take the firearms from the home and place them inside the vehicle they used to flee the scene of the burglary. As a result, he not only participated in furtherance of the joint criminal activity of burglary in which Mr. John unlawfully took possession of the firearms, but he had knowing constructive possession of four of the firearms in the vehicle he jointly occupied. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1229 (10th Cir. 2008) (holding constructive possession in a joint occupancy situation does not require a showing defendant intended to exercise dominion or control over the firearms). Thus, regardless of his self-serving assertion he did not want to have anything to do with the firearms, Mr. Jones constructively possessed the four firearms placed in the car, which, together with his actual possession of the one removed from the safe, is also sufficient to apply a two-level enhancement under § 2K2.1(b)(1) for relevant conduct involving three or more firearms.

For these reasons, the district court's application of the two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for relevant conduct involving three or more firearms has factual support in the record, and we cannot say the district court's finding is clearly erroneous or that we are left with a definite and firm conviction that a mistake has been made. Accordingly, the district court did

not abuse its discretion or otherwise err in applying the two-level enhancement under § 2K2.1(b)(1) for the purpose of calculating his sentence.  As a result, Mr. Jones's sixty-month below-Guidelines sentence is procedurally reasonable.

IV.  Conclusion

Accordingly, we **AFFIRM** Mr. Jones's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge