In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3371

RICK E. JACOBSEN,

*Plaintiff-Appellant*,

*v.*

COMMISSIONER OF INTERNAL
REVENUE,

*Defendant-Appellee.*

Appeal from the United States Tax Court.
No. 25348-15 — **Elizabeth Crewson Paris**, *Judge.*

ARGUED SEPTEMBER 13, 2019 — DECIDED FEBRUARY 13, 2020

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Petitioner Rick E. Jacobsen's former wife Tina M. Lemmens embezzled over $400,000 from her employer, income that was not reported on the couple's jointly filed income taxes. As relevant here, after Lemmens was convicted for her embezzlement, the Internal Revenue Service ("IRS") audited the couple's joint tax returns for 2010 and 2011.

For those years, the IRS proposed total net adjustments attributable to omitted embezzlement income (there were other unrelated proposed adjustments) of over $300,000, with corresponding deficiencies and accuracy-related penalties of over $150,000. Jacobsen sought relief under the tax code's "innocent spouse" provision, 26 U.S.C. § 6015(b), and equitable relief provision, § 6015(f). As relevant here, the Tax Court granted Jacobsen innocent spouse relief for 2010, but denied all relief for 2011. Jacobsen appeals, but we affirm.

## I.

The stipulated facts as found by the Tax Court provide a backdrop for Jacobsen's claim on appeal. While Jacobsen and Lemmens were married, Lemmens, an accountant, handled all of their finances. During the relevant time period (2009-2011), Lemmens worked for a blood bank, where her duties included processing accounts payable and issuing checks to vendors. Jacobsen, who holds an associate's degree, worked as a machine operator at a factory. In addition to working at the factory, which he did in twelve-hour shifts fourteen days per month, Jacobsen inspected properties for financial institutions and insurance companies.

Jacobsen deposited wages from his work as a machine operator into a personal account at Evergreen Credit Union in Wisconsin. The remainder of the couple's income, from both Lemmens' job and Jacobsen's home inspections, was deposited into a joint account at Community First Credit Union.

That joint account was also used by Lemmens for deposits that she had actually embezzled from the blood bank. Throughout the tax years at issue here, Lemmens was embez-

zling from the blood bank by drafting checks to herself or adding sizable amounts to her own paychecks and classifying the excess as reimbursements.

Lemmens was eventually arrested in June 2011 for embezzling over $450,000 from her employer. The Tax Court credited Jacobsen's testimony that he neither knew of, nor had reason to know of Lemmens' scheme at the time of her arrest.

First, as discussed above, Jacobsen was for the most part completely uninvolved with the couple's finances. Specifically, he never reviewed bank or credit card statements, nor did he look over their personal or business finances, which Lemmens managed. Nor would have reviewing their finances necessarily have alerted him to Lemmens' embezzlement given her practice of depositing the embezzled funds via check into the couple's joint account. These checks would have been difficult to distinguish from the checks for the home inspection business, which were also made out to Lemmens and tended to be for similar amounts.

Moreover, throughout the period of Lemmens' embezzlement, there was nothing lavish or excessive about their spending. Although they did gamble heavily during the relevant time period, the Tax Court concluded that Jacobsen attributed the funds available for gambling to the success of their home inspection business and the available income from their other employment. The Tax Court also concluded that nothing about their lifestyle would have alerted him to her scheme. During the years Lemmens was embezzling from the blood bank, Jacobsen drove a used car that he did not replace,

they did not pay off their mortgage, and at one point they even had some utilities disconnected for failing to pay.

Lemmens was convicted in 2011 and sentenced in January 2012. Although the two remained married throughout the criminal trial and into her term of imprisonment, they ultimately became estranged sometime in 2013 and divorced in May 2015. Their divorce decree specified that Jacobsen and Lemmens would each pay half of the 2010 and 2011 tax liabilities. Jacobsen, however, maintains that he believed he was only agreeing to pay half of the liabilities remaining after excluding the embezzlement income.

The disputed tax liabilities arose from the audit of the couple's jointly submitted tax returns for 2009, 2010, and 2011. After Lemmens was convicted, an IRS agent analyzed bank deposits and interviewed both Lemmens (from jail) and Jacobsen. In early 2013, the IRS prepared Form 4549 Tax Examination Changes proposing adjustments to the tax returns from all three years, most of which arose from income adjustments attributable to Lemmens' embezzlement.[1] As relevant here, for 2010 the IRS proposed total net adjustments of $298,710.14, of which $261,959.14 was attributable to omitted embezzlement income. That proposed adjustment resulted in a deficiency of $103,247 and an accuracy-related penalty under 26 U.S.C. § 6662(a) (imposing a 20 percent penalty onto amount of underpayment) of $20,649.40. For 2011, the total proposed adjustment was $106,424.94, of which $62,449.94 was attribut-

---

[1]  Jacobsen did not challenge proposed adjustments that were unrelated to Lemmens's embezzlement, such as approximately $45,000 in disallowed Schedule C car and truck expenses from the home inspection business.

able to omitted embezzlement income. This created a deficiency of $25,912, and an accuracy-related penalty of $5,182.[2] Lemmens and Jacobsen both signed the Form 4549, thereby consenting to the assessed adjustments and penalties.

In January 2014, Jacobsen filed a Form 8857 with the IRS, requesting innocent spouse relief under § 1615 for 2009, 2010, and 2011. Although the IRS made a preliminary determination granting Jacobsen full relief, it reconsidered its decision after Lemmens filed a statement of disagreement. Ultimately in July 2015, the IRS office of appeals denied all relief under § 6015.

In October that same year, Jacobsen, who was by then divorced from Lemmens, filed a timely petition under § 6015(e) seeking review in the Tax Court and entitlement to relief for all three years. The Tax Court first dismissed Jacobsen's 2009 tax and penalty liability as moot because it had by then been discharged in bankruptcy.

The Tax Court then considered Jacobsen's eligibility for relief under 26 U.S.C. § 6015(b), (c), and (f), which each provide a means for relief from liability for an understatement attributable to the other spouse listed on the joint filing. Each subsection contains slightly different criteria for relief, but as relevant here, relief is available under both subsections (b) and (c) only if the Tax Court finds that the requesting spouse neither actually knew nor had reason to know of the understatement.

The Tax Court granted Jacobsen § 6015(b) relief for 2010, but denied any relief for 2011. In reaching its conclusion, the

---

[2] For 2011 then, Jacobsen's half of the $31,094 liability (deficiency plus accuracy penalty) cited by the Tax Court would be $15,547.

Tax Court accepted Jacobsen's testimony that he was totally unaware of his then-wife's embezzlement when they filed their 2010 tax returns.

The Tax Court also considered the factors set forth in 26 C.F.R. § 1.6015-2(c) (containing a non-exhaustive list of facts and circumstances relevant to concluding whether the requesting spouse should have known of the understatement) and concluded that Jacobsen likewise had no reason to know of the 2010 understatement. Section 1.6015-2(c) directs the court to consider "the nature of the erroneous item and the amount of the erroneous item relative to other items; the couple's financial situation; the requesting spouse's educational background and business experience; the extent of the requesting spouse's participation in the activity that resulted in the erroneous item; whether the requesting spouse failed to inquire, at or before the time the return was signed, about items on the return or omitted from the return that a reasonable person would question; and whether the erroneous item represented a departure from a recurring pattern reflected in prior years' returns." The Tax Court concluded that each of these factors supported the determination that Jacobsen was unaware of the understatement, as required for relief under § 6015(b).

The assessment for 2011, however, was different. Lemmens was arrested that same year, so by the time the 2011 returns were filed in April 2012, she had been convicted of embezzlement and was incarcerated. The Tax Court thus denied relief under § 6015(b), and (c) on account of Jacobsen's knowledge of the omitted income. It then considered whether Jacobsen was entitled to relief under § 6015(f), which applies when relief is

unavailable under subsections (b) or (c), but it would nonetheless be inequitable to hold the requesting spouse liable.

With the exception of knowledge of the understatement, which bars relief under § 6015(b), the considerations for equitable relief under § 6015(f) mirror those the Tax Court had considered in assessing Jacobsen's eligibility for relief under § 6015(b), which applies when the requesting spouse lacked knowledge of the understatement *and* it would be inequitable given all the facts and circumstances to hold that spouse liable. *See* 26 U.S.C. § 6015(b)(1)(C), (D); *see also* 26 C.F.R. § 1.6015-2(d) ("All of the facts and circumstances are considered in determining whether it is inequitable to hold a requesting spouse jointly and severally liable for an understatement."). The Tax Court considered Jacobsen's eligibility for equitable relief with reference to each of the following seven nonexhaustive factors set forth in the applicable IRS Revenue Procedure: (1) the current marital status of the spouses, (2) whether the requesting spouse would suffer economic hardship if relief were not granted, (3) whether the requesting spouse knew or had reason to know of the understatement, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefitted from the understatement, (6) whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health at the time the joint return was filed. Rev. Proc. 2013-34, 2013-43 I.R.B. 397, at 400–403.

With the exception of the third factor, whether Jacobsen knew or had reason to know of the understatement, the Tax

Court concluded that each of the foregoing factors favored Jacobsen or were "neutral." The Tax Court nonetheless concluded that Jacobsen's actual knowledge in 2011 of Lemmens' embezzlement and the accompanying tax understatement weighed "too heavily" against him to allow equitable relief under § 6015(f). Jacobsen appeals, challenging only the Tax Court's conclusion that he was not entitled to equitable relief from liabilities arising from embezzlement income omitted from the 2011 return.

## II

The Internal Revenue Code specifies that a husband and wife who file a joint tax return are jointly and severally liable for the taxes on their combined incomes. 26 U.S.C. § 6013(d); *see*, *e.g.*, *Resser v. C.I.R.*, 74 F.3d 1528, 1534 (7th Cir. 1996). The so-called innocent spouse statute of the Code, 26 U.S.C. § 6015, provides potential avenues of relief to those spouses who would otherwise be held unfairly liable for tax obligations arising from jointly filed federal income tax returns. Section 6015 liberalizes the availability of innocent spouse relief beyond what was previously available under § 6013(e)[3], which Congress added after the Supreme Court held in *James v. United States*, 366 U.S. 213 (1961), that embezzled funds constituted taxable income.

---

[3] In 1998, Congress significantly restructured and expanded the availability of innocent spouse relief by repealing 26 U.S.C. § 6013(e) and replacing it with § 6015 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3201, 112 Stat. 685, 740 (1998). *See* H. Conf. Rep. No. 105-599, at 249 (1998).

Section 6013(e) was designed to protect innocent taxpayers after the IRS began assessing underpayments and associated penalties from the spouses of embezzlers, even when the spouse was unaware of the embezzling or associated tax liability. It allowed relief where the underpayment was due to fraud by the taxpayer's spouse, the taxpayer did not and had no reason to know of the underpayment, and it would be inequitable to hold the taxpayer liable for the underpayment in light of the facts and circumstances. In 1984, Congress amended that section and slightly broadened the available relief. *See* Pub. L. No. 98-369, § 424(a), 98 Stat. 494, 801 (1984). Still not content with the availability of relief, Congress later repealed § 6013(e) entirely and enacted § 6015 in the Internal Revenue Service Restructuring and Reform Act of 1998 to make "innocent spouse status easier to obtain." H.R. Conf. Rep. No. 105-599, at 249–51 (1998), reprinted in 1998 U.S.C.C.A.N. 288.

Section 6015, as relevant here, provides three separate avenues for relief in subsections (b), (c), and (f). Conceding his ineligibility for relief under § 6015(b) or (c) on account of his awareness of Lemmens' embezzlement when he filed the couple's 2011 taxes, Jacobsen challenges only the Tax Court's conclusion that he is ineligible for equitable relief under § 6015(f). The Tax Court may grant such relief when "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)."

Although the parties agree generally that we review the Tax Court's decisions "in the same manner and to the same extent as we review district court decisions from the bench in

civil actions," 26 U.S.C. § 7482(a)(1); *Gyorgy v. C.I.R.*, 779 F.3d 466, 472–73 (7th Cir. 2015); *Resser*, 74 F.3d at 1535, they disagree as to whether that means we review the denial of relief under § 6015(f) for clear error or an abuse of discretion.

The parties' differing views on the standard of review hinge in part on the Taxpayer First Act, legislation that was passed shortly after the parties filed their briefs. *See* Pub. L. No. 116-25, 133 Stat. 981 (July 1, 2019). As relevant here, § 1203 of the Taxpayer First Act added a new paragraph at the end of § 6015(e) codifying the existing practice of de novo review by the Tax Court of appeals from the denial of innocent spouse relief. Because this addition to § 6015 simply "clarified," *see* Pub. L. No. 116-25, § 1203 ("Clarification of equitable relief from joint liability."), the existing standard and scope of Tax Court review, the Commissioner maintains it has no effect on our standard of review. Thus, argues the Commissioner, denial of relief under § 6015(f) should be reviewed in the same manner as any determination of equitable relief in the district court—for abuse of discretion. *See*, *e.g.*, *Bowes v. Ind. Sec. of State*, 837 F.3d 813, 817 (7th Cir. 2016) (explaining general applicability of abuse of discretion standard to equitable determinations).

Jacobsen, however, insists that the Taxpayer First Act confirms his position that we review decisions under § 6015(f) for clear error. Jacobsen explains his reasoning as follows: (1) the Taxpayer First Act makes equitable relief under § 6015(f) mandatory as opposed to discretionary; (2) mandatory relief under subsection (f) "is now the same as mandatory relief under subsection (b)," which also contains an inequity

condition; and so (3) Tax Court rulings under subsection (f) should be reviewed under the same standard as subsection (b). Jacobsen finds further support for his position with the fact that subsection (b) is a continuation and expansion of former § 6013(e), which we held in *Resser* was subject to clear error review, 74 F.3d at 1535.

We are unconvinced, however, that the Taxpayer First Act (which settled only the *Tax Court's* standard of review of IRS determinations) sheds any particular light on *our* standard of review as to relief under § 6015(f), which multiple courts have recognized as for abuse of discretion. *See Greer v. C.I.R.*, 595 F.3d 398, 344 (6th Cir. 2010) (innocent spouse relief under § 6015(b) reviewed for clear error but equitable relief under § 6015(f) reviewed for abuse of discretion); *Cheshire v. C.I.R.*, 282 F.3d 326, 338 (5th Cir. 2002) (same). Fortunately, we need not resolve the issue today, as we would affirm the Tax Court's decision under either deferential standard. *See Freda v. C.I.R.*, 656 F.3d 570, 573 (7th Cir. 2011) (declining to "unravel" the "quandary" about the appropriate standard of review where Tax Court's decision would be upheld under either standard); *Wellpoint, Inc. v. C.I.R.*, 599 F.3d 641, 645 (7th Cir. 2010) ("We needn't wade deeper into this mire, however. For this is not a case in which the standard of review determines the out-come[.]").

As described above, Revenue Procedure 2013-34 identifies seven possible factors for consideration in assessing whether to grant relief under § 6015(f). And although it is not bound by them, the Tax Court generally follows the applicable Notices

or Revenue Procedures. *Pullins v. C.I.R.*, 136 T.C. 432, 438–39 (2011).

Jacobsen acknowledges that with the exception of his knowledge for 2011, the Tax Court correctly assessed the positive, negative, or neutral impact of each of the seven factors listed in Revenue Procedure 2013-34. He also concedes that in light of Lemmens' conviction in early 2012, he had "reason to know" of the embezzlement income by the time he filed their 2011 tax return. Yet he maintains that the Tax Court erred when it concluded that he had *actual knowledge* of the unreported embezzlement income for 2011.

The longstanding test for "knowledge" of omitted taxable income "is not knowledge of the tax consequences of a transaction but rather knowledge of the transaction itself." *See, e.g., Quinn v. C.I.R.*, 524 F.2d 617, 626 (7th Cir. 1975). Under this standard, the Tax Court's conclusion that Jacobsen, who was aware of Lemmens' indictment, trial, and subsequent conviction for embezzlement, had actual knowledge of the embezzled income is uncontroversial. In conceding that he had "reason to know" of the embezzled income, Jacobsen admits that after Lemmens' conviction but before he filed their taxes he should have looked into the 2011 bank statements to ascertain the amounts of embezzled income, looked at the analysis of embezzled income by year from Lemmens' trial, or sought information from Lemmens to determine how much she embezzled in 2011. But, Jacobsen argues, because he did none of these things, he lacked "actual knowledge" of the 2011 embezzlement income as contemplated by Revenue Procedure 2013-34.

Jacobsen's argument boils down to his claim that he cannot be accountable for having actual knowledge because there was no evidence in the Tax Court that he knew the *precise amounts* embezzled, an argument he supports with reference to slight differences in the totals calculated by the restitution order in Lemmens' criminal trial, the joint stipulation in their divorce decree, and the IRS agent's audit calculations.

Jacobsen's argument, however, is based on the faulty premise that he is not responsible for demonstrating that he lacked knowledge of the embezzled income. First, relying on § 6015(c)(3)(C), Jacobsen maintains that innocent spouse relief is foreclosed only if "*the Secretary demonstrates* that an individual making an election under this subsection has actual knowledge at the time such individual signed the return of any item giving rise to the deficiency." (Emphasis added.) But § 6015(c), which applies to taxpayers who are no longer married or otherwise separated according to certain criteria in the statute—criteria Jacobsen acknowledges do not apply to him and Lemmens for the 2011 return—is an exception to the general rule that for all other types of innocent spouse relief the *taxpayer* bears the burden of proof. *See, e.g.*, *Cheshire*, 282 F.3d at 332 ("Except for the knowledge requirement of § 6015(c)(3)(C) … the taxpayer bears the burden of proving that she has met all the prerequisites for innocent spouse relief."); *see also C.I.R. v. Neal*, 557 F.3d 1262, 1277 (11th Cir. 2009) (taxpayer bears burden of demonstrating eligibility for equitable relief under § 6015(f)). Given the Tax Court's undisputed finding that Jacobsen was aware of Lemmens' embezzlement when he filed the 2011 return, it would be his burden, not

that of the Commissioner, to demonstrate his lack of knowledge.

Instead of doing this, Jacobsen simply notes that the Tax Court made no explicit finding that he knew the *particular amount* of embezzlement income in 2011. Jacobsen faults the Tax Court's actual knowledge finding because there "was nothing in the record" demonstrating that he read any documentation from Lemmens' trial that would establish the precise amount of embezzled income from 2011. But it would be Jacobsen's obligation, not that of the Commissioner, to have demonstrated that he could not have accurately determined the amount embezzled in 2011. Nothing in the record suggests he did so, and we therefore see no reason to question the Tax Court's conclusion that he had actual knowledge of the 2011 embezzlement income.

The Tax Court reached that conclusion after considering all the facts and circumstances as anticipated in Sec. 1.6015-3(c)(2)(iv), Income Tax Regs. The Tax Court noted that by the time he filed the return in April, Jacobsen was aware of Lemmens' arrest in June of 2011, her conviction in November 2011 of embezzling $485,681, and her January 2012 sentence to incarceration and restitution. Jacobsen cites no authority, nor are we aware of any, suggesting that a finding of actual knowledge would be precluded by the fact that a petitioning spouse may not, as a result of his own lack of investigation, be aware of the precise amount of embezzlement, particularly when he has not offered any explanation as to why he failed to access that information. *See Porter v. C.I.R.*, 132 T.C. 203, 212 (2009) (§ 6015 "does not protect a spouse who turns a blind eye to facts readily available to her").

Jacobsen's argument that the Tax Court improperly assigned too much weight to that knowledge is more persuasive. Jacobsen claims that because, with the exception of knowledge, the factors relevant to relief under § 6015(f) all favored him or were neutral, by denying Jacobsen's request for equitable relief the Tax Court essentially elevated lack of knowledge to a but-for criteria for relief. Jacobsen suggests the Tax Court's conclusion was especially problematic in light of Congressional intention to liberalize innocent spouse relief. Specifically, prior to the 2013 changes discussed *supra*, the relevant Revenue Procedures directed that actual knowledge of the understatement would be treated "as a strong factor weighing against relief." Rev. Proc. 2003-61, 2003-32, I.R.B. 296, § 4.03(2)(a)(iii)(B), *superseded by* Rev. Proc. 2013-34. The Revenue Procedures accompanying the 2013 changes to § 6015 expressly abandon that approach, stating in Rev. Proc. 2013-34, § 3.07 that "actual knowledge of the item giving rise to an understatement or deficiency will no longer be weighed more heavily than other factors, as it did under Rev. Proc. 2003-61." *See also* Rev. Proc. 2013-34 § 4.03(2)(c)(i)(A) ("Actual knowledge of the item giving rise to the understatement or deficiency will not be weighted more heavily than any other factor.").

As discussed above, the Tax Court considered each of the seven factors identified for consideration in Internal Revenue Procedure 2013-34 § 4.03(2)(a)–(g) and determined that only the third factor, whether the requesting spouse knew or had reason to know of the understatement, weighed against Jacobsen's request for equitable relief.

Notably, the court fully considered those factors favoring relief. It noted Jacobsen's failure to benefit significantly from

the embezzled income as well as his subsequent compliance with tax laws. And the court took note of the fact that Jacobsen is a veteran suffering from PTSD who experienced a mental breakdown in response to Lemmens' crime and has since moved three times and held four different jobs.

Because each of the factors for consideration was either neutral or favored relief, Jacobsen claims the Tax Court must have weighed knowledge more heavily than the other factors, in contravention of Rev. Proc. 2013-34 § 4.03(2)(c)(i)(A). Nothing in the Tax Court's opinion, however, suggests that it believed knowledge of the embezzled funds necessarily precluded Jacobsen from equitable relief or automatically outweighed the other factors for consideration. Although the 2013 regulations make clear that knowledge is no longer *necessarily* a strong factor weighing against relief, as Jacobsen himself acknowledges in his brief, they do not prohibit the Tax Court from assigning more weight to petitioner's knowledge if such a conclusion is supported by the totality of the circumstances. As explained in the Revenue Procedures, "no one factor or a majority of factors necessarily determines the outcome." Rev. Proc. 2013-34 § 4.03. And although knowledge no longer weighs heavily *against* relief, nothing in the statute or revenue procedures forecloses the decisionmaker from concluding that in light of "all the facts and circumstances," § 6015(f), knowledge of the understatement weighs heavily against granting equitable relief. There is thus no reason to believe the Tax Court's decision was *necessarily* erroneous because only one of the nonexhaustive factors for consideration weighed against relief.

Jacobsen also suggests it was inappropriate for the Tax Court to factor his "participation in preparing the 2011 return" into its assessment, characterizing it as "another way for the court to extra-count" Jacobsen's knowledge of the embezzlment. In assessing the role of Jacobsen's knowledge in his entitlement to equitable relief, the court noted that in addition to Jacobsen's actual knowledge on account of Lemmens' criminal conviction and sentence, in 2011 Jacobsen himself provided the tax information to the paid preparer, whereas in previous years Lemmens had always prepared and submitted the tax information. Far from demonstrating that the Tax Court erred, the court's consideration of his role in preparing the 2011 return demonstrates its commitment to heed the Revenue Procedure's directive that the seven listed factors merely provide "guides" as opposed to an "exclusive list" and that "[o]ther factors relevant to a specific claim for relief may also be taken into account." Rev. Proc. 2013-34 § 4.03(2).

It is clear from its opinion that the Tax Court considered the factors relevant to Jacobsen's specific claim for relief. The court considered Jacobsen's individual circumstances as it analyzed each of the listed factors. Jacobsen does not argue, nor could he, that the Tax Court misapprehended the facts or otherwise overlooked information relevant to Jacobsen's claim.

We are sympathetic to Jacobsen's situation, and recognize that the Tax Court could have easily decided on this record that Jacobsen was entitled to equitable relief under § 6015(f). Indeed, were we deciding the case in the first instance as opposed to on deferential review, we may have decided the case differently. But notwithstanding the existence of many factors favoring relief and only Jacobsen's knowledge counsel-

ing against it, nothing in the record indicates the Tax Court misapprehended the weight to be accorded Jacobsen's knowledge or treated it as a decisive factor barring relief. Indeed, its discussion of each of the factors as well as the relevance of Jacobsen's involvement in preparing the 2011 taxes demonstrate that the Tax Court did not engage in a mechanical balancing of the factors where the number of factors favoring relief necessarily counterbalanced the ultimate question of whether it was inequitable to hold Jacobsen liable for the 2011 deficiencies. We thus cannot say the Tax Court either abused its discretion or clearly erred in its denial of relief for 2011. *See Greer*, 595 F.3d at 353 ("We are indeed sympathetic to Mrs. Greer's situation, and again might decide her case differently had we the opportunity to rule in the first instance rather than on deferential review. But we cannot say that the prospect of financial ruin is so plain on the record that the Tax Court abused its discretion in denying equitable relief.").

### III.

Jacobsen's case is a close one, and we are ultimately persuaded by our deferential standard of review. Because nothing in the record leads us to believe the Tax Court clearly erred or abused its discretion, we AFFIRM its denial of equitable relief.