In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3363

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ZHAOFA WANG,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00154-14—**John W. Darrah,** *Judge*.

ARGUED OCTOBER 31, 2012—DECIDED FEBRUARY 25, 2013

Before EASTERBROOK, *Chief Judge,* and WILLIAMS and
SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Zhaofa Wang was involved in
a high-volume false document conspiracy that produced
an estimated 7,000 phony identification documents for
customers in Illinois. Members of the conspiracy altered
valid passports to match their customers' identification
information, created fake documents to prove Illinois
residency, and helped their customers obtain state iden-

tification cards or driver's licenses. Wang participated in the conspiracy from "no later than 2008" until February 2009, connecting customers with document manufacturers, transporting them to state facilities, collecting payments, and retrieving false passports for reuse.

At sentencing, Wang received a nine-level increase to his base offense level because the district court held him accountable for more than one hundred false documents. The court also denied Wang's request for a minor-participant reduction, finding that his active role in the conspiracy did not warrant a reduction. Wang appeals both of these decisions. We affirm, concluding that the district court did not clearly err when it applied the nine-level increase based on the scope of Wang's jointly undertaken criminal activity and his demonstrated commitment to the conspiracy. And because Wang played an active, essential role in many aspects of the scheme, the district court did not clearly err when it denied his request for a minor-participant reduction.

## I. BACKGROUND

Zhaofa Wang participated in a document fraud conspiracy that operated in various Illinois cities from 2003 through 2009. Members of the conspiracy obtained Social Security cards issued to people legally working in the United States territory of Saipan and altered passports from the People's Republic of China ("PRC") to match the Social Security cards and to include photos of their

customers. Next, they falsified documents, such as letters from utility companies, to show Illinois residency. Members charged customers $1,500 to $3,000 for the full set of false identification documents.

But members did more than just create false identification documents for their clients. They also transported customers or arranged for their transportation to Illinois Secretary of State facilities to obtain Illinois driver's licenses or identification cards using the false documents. For customers unable or unwilling to take the vehicle road test, conspiracy members bribed examiners, who in turn falsely completed their paperwork. And so the conspiracy could continue, customers who received driver's licenses or identification cards either returned the PRC passports to enable other customers to use them or paid an additional fee to keep them. According to the government and the district court, the leader of the conspiracy likely trafficked more than 7,000 documents.

The government classifies Wang as a "broker" who linked document "manufacturers" with customers and alleges that Wang participated in the conspiracy from "no later than 2008" until February 2009. Wang claims that he was merely a driver who transported customers to the state facilities, collected payments, and retrieved the altered PRC passports after customers obtained driver's licenses or identification cards. Wang estimates that he transported customers on approximately fifteen occasions.

Two months after a December 2008 controlled buy, Wang and other members of the scheme were arrested.

In total, forty-one people were indicted for activity connected to this conspiracy. Wang pled guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 371 and 2, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). In his plea agreement, he admitted to conspiring with three others: lead defendant Jun Yun Zhang, document manufacturer Yonghui Wang, and Jun Xi Zhang, the brother of the lead defendant.

Section 2L2.1(b)(2) of the United States Sentencing Guidelines provides for an increase to a defendant's offense level based on the number of documents involved: a nine-level increase for six to twenty-four documents, a six-level increase for twenty-five to ninety-nine documents, and a nine-level increase for one hundred or more documents. At sentencing, the government argued that Wang should receive the nine-level increase based on his co-conspirators' criminal activities. Wang, on the other hand, argued that the court should hold him responsible for only six to twenty-four documents because he was not aware of the scope of the conspiracy and it was not reasonably foreseeable to him that one hundred or more documents were involved. He also asserted that he should receive a two-level decrease under Section 3B1.2(b) because his role in the scheme was limited.

The sentencing court rejected both of Wang's arguments, set his offense level at twenty-one, and calculated his guideline range as thirty-seven to forty-six months' imprisonment on the conspiracy count. The court imposed a term of imprisonment of thirty-seven months

on that count and a consecutive, mandatory sentence of twenty-four months' imprisonment on the aggravated identity theft count. *See* 18 U.S.C. § 1028A. Wang appeals his sentence, arguing that the district court erred by applying the nine-level increase under Section 2L2.1(b)(2) and by denying the minor-participant reduction under Section 3B1.2(b).

## II. ANALYSIS

### A. Applying the Nine-Level Increase Was Not Error

A district court may hold a defendant accountable for substantive crimes committed by his co-conspirators. U.S.S.G. § 1B1.3(a)(1)(B). To do so, the court "must first determine the scope of the criminal activity the defendant agreed to jointly undertake, and then determine whether the conduct of others was in furtherance of, and reasonably foreseeable to the defendant in connection with, that activity." *United States v. Salem*, 597 F.3d 877, 888-89 (7th Cir. 2010). We review these factual findings for clear error, and "we will uphold the district court's findings unless, after considering all of the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* at 884 (quotation marks omitted).

The Sentencing Commission defines "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." U.S.S.G. § 1B1.3(a)(1)(B). Factors relevant in determining the scope of jointly undertaken

activity include "(1) the existence of a single scheme; (2) similarities in modus operandi; (3) coordination of activities among schemers; (4) pooling of resources or profits; (5) knowledge of the scope of the scheme; and (6) length and degree of the defendant's participation in the scheme." *United States v. Salem*, 657 F.3d 560, 564 (7th Cir. 2011) (internal citations omitted).

As the district court noted, Wang acknowledged in his plea agreement that he conspired with several others, including the lead defendant, "to willfully and knowingly furnish to another for use a false, forged, and counterfeited passport, or instrument purporting to be a passport . . . ." Relying on Wang's plea agreement, the district court found that the scope of the criminal activity Wang agreed to jointly undertake included the full range of the conspiracy's criminal activities specified in his plea agreement. Wang played a personal role in most of that jointly undertaken activity by locating customers, connecting them with document manufacturers, helping them use false documents to obtain Illinois driver's licenses or identification cards, collecting payments, and retrieving falsified passports for reuse. (He did not, apparently, manufacture false documents.) Wang also admitted that he "knew that many [c]ustomers were using the false PRC passports to obtain Illinois driver's licenses or identification cards in alias identities."

Applying this information to the relevant factors, the district court did not clearly err when it determined that Wang agreed to jointly undertake most—if not all—of

the conspiracy's criminal activity for the time he was involved in it. There was one single scheme to manufacture and distribute false documents and Wang was a key participant in it. The conspiracy's activities were highly coordinated, and Wang had clear responsibilities. And although Wang was not involved in the conspiracy from its inception, he did participate in it for a substantial period of time.

Wang argues that he was not aware of the scope of the scheme. But the district court, which relied on the specific activities Wang admitted to being involved in and the people he acknowledged conspiring with, did not clearly err by concluding otherwise. Wang understood the nature of the conspiracy and the various criminal acts it required, and he actively participated in them. And at the very least, he was aware that the conspiracy involved three other people he admitted conspiring with. This is not a situation where the defendant did not understand the nature of the conspiracy in which he was involved. For example, we remanded a case for resentencing when the district court held a defendant accountable for a substantial amount of crack cocaine even though he sold only powder cocaine to a co-conspirator and the government offered no evidence that he sold crack cocaine or knew that his co-conspirator intended to convert the powder into crack. *United States v. Soto-Piedra*, 525 F.3d 527, 531 (7th Cir. 2008). In that case, we found that the district court improperly held the defendant accountable for actions he did "not assist or agree to promote." *Id.* at 533. Unlike that defendant, Wang was a full participant in the conspiracy. He under-

stood that the goal of the conspiracy was to manufacture and distribute false documents, actively assisted the conspiracy, and knew that the conspiracy involved at least the three people whose criminal activity the district court found to be relevant conduct.

After determining the scope of the jointly undertaken criminal activity, the district court then found that it was reasonably foreseeable to Wang that the conspiracy, which the district court estimated serviced twenty to thirty customers per week for several years, involved more than one hundred documents. In a minute order, the court stated that its finding of reasonable foreseeability was based on the facts that Wang: (1) was involved in the conspiracy for at least a year; (2) "shared a close personal and working relationship with Jun Xi Zhang, the lead defendant's brother, who also worked in the business"; (3) acknowledged that he conspired with Jun Yun Zhang, the lead defendant, and Yonghui Wang, both of whom admitted that it was foreseeable to them that the offense involved more than one hundred documents; (4) was aware that he was engaged in a "high-volume" document fraud business; and (5) admitted using passports multiple times. (So, despite Wang's argument that "the reasons for the district court's determination were not articulated with any degree of precision," the district court did express the facts supporting its determination.)

Wang argues that because he did not know how many other drivers the conspiracy employed, he could not have been aware of the number of documents involved

beyond the fifteen he acknowledges personally handling. But "[f]oreseeability is not equivalent to actual knowledge," *United States v. Aslan*, 644 F.3d 526, 537 (7th Cir. 2011), and the reasonable foreseeability inquiry does not rest on Wang's awareness of specific transactions. Furthermore, "[a] defendant need not know of a co-schemer's actions for those actions reasonably to be foreseeable to the defendant." *Id*. Nor does a defendant need to interact with his co-conspirators to be held accountable for their substantive crimes. *See United States v. Adeniji*, 221 F.3d 1020, 1029 (7th Cir. 2000).

The district court's task at sentencing was not to divine how many customers Wang was aware of, how many of the forty-one indicted people Wang was personally acquainted with, or whether he knew the number of times the conspiracy's members used each false document. Rather, the court could determine reasonable foreseeability based on whether Wang "'demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct.'" *United States v. Acosta*, 534 F.3d 574, 585-86 (7th Cir. 2008) (quoting *United States v. Zarnes*, 33 F.3d 1454, 1474 (7th Cir. 1994)). The evidence before the district court was sufficient to find that Wang was fully committed to the conspiracy's objectives. He transported customers, delivered false documents, collected payments, and, perhaps most important, facilitated the conspiracy's continued existence by retrieving false documents for reuse. And he did this knowing that at least three others were also involved in the same scheme.

The only evidence of a limited commitment is the fact that Wang's involvement began "no later than 2008," five years after the start of the conspiracy. But there is no evidence that the court held Wang accountable for documents that predated his involvement in the conspiracy. At oral argument, the government asserted that the district court held Wang accountable only for the criminal activity associated with the three people Wang admitted that he conspired with for the time period he was involved in the conspiracy. Wang did not argue otherwise. Given the length and nature of Wang's involvement, the district court did not clearly err when it found that it was reasonably foreseeable to Wang that the conspiracy involved more than one hundred documents.

### B.  Declining to Apply the Minor-Participant Reduction Was Not Error

A defendant seeking a minor-participant reduction under Section 3B1.2(b) "must prove by a preponderance of the evidence that he was substantially less culpable than the average participant in the criminal enterprise." *United States v. Lopez*, 545 F.3d 515, 516 (7th Cir. 2008). Wang argues that he should have received this reduction because he was not involved in the scheme for its entire duration, did not know of its extent, did not participate in the majority of the fraud, and was only one of several transporters. The district court, which found that Wang "was an active participant in the document fraud business," determined that

he was not substantially less culpable than the other participants and, therefore, was not entitled to the reduction. We review the denial of a minor-participant reduction for clear error. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004).

The key factor for a minor-participant reduction is the defendant's relative culpability, and as discussed above, Wang was fully involved in the conspiracy. Over a significant period of time, he played an active, essential role by locating customers, transporting them, delivering false documents, collecting payments, and ensuring that customers returned the false passports for reuse. Even if others were more culpable, the court did not clearly err by denying the minor-participant reduction. *See United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) ("where each person was an 'essential component' in the conspiracy, the fact that other members of conspiracy were more involved does not entitle a defendant a reduction in the offense level"). And as the district court noted, Wang's argument in favor of the minor-participant reduction only shows that his level of involvement did not warrant an offense-level *increase* for an aggravating role in the conspiracy. *See* U.S.S.G. § 3B1.1.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM Wang's sentence.