In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2739

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

XIAO YONG ZHENG,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 1046-7 — **Robert M. Dow, Jr.**, *Judge*.

ARGUED FEBRUARY 27, 2013 — DECIDED AUGUST 12, 2014

Before FLAUM, SYKES, and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*. Xiao Yong Zheng was involved in a Chicago-based document-fraud operation that made fake Chinese passports and other identification documents for customers seeking false documents to use to obtain Illinois driver's licenses and identification cards. Zheng pleaded guilty to aggravated identity theft and conspiracy to misuse Social

Security numbers and commit passport fraud. The district court imposed a sentence of 61 months. In calculating Zheng's sentencing guidelines range, the judge applied a two-level enhancement for fraudulent use of a foreign passport. *See* U.S.S.G. 2L2.1(b)(5)(B). Zheng challenges the application of the enhancement based on a special guideline rule against "double counting" for aggravated identity theft.

We vacate and remand for resentencing. A person commits aggravated identity theft when he knowingly transfers, possesses, or uses a means of identification without lawful authority "during and in relation to" a set of enumerated offenses. *See* 18 U.S.C. § 1028A(a)(1), (c). A conviction for violating § 1028A adds a mandatory consecutive two-year term to whatever sentence the defendant receives for the predicate crime. *See id.* § 1028A(a)(1), (b), *implemented by* U.S.S.G. § 2B1.6(a). To avoid enhancing the defendant's sentence twice for the same offense conduct—once under the guideline for the predicate offense and again under § 1028A—the Sentencing Commission has directed judges not to apply any specific offense characteristic for the transfer, possession, or use of a "means of identification." U.S.S.G. § 2B1.6 cmt. n.2. The rationale is that the sentence for aggravated identity theft already accounts for this offense conduct. *Id.*

A foreign passport is a "means of identification" under the definition of that term found in 18 U.S.C. § 1028(d)(7), which is incorporated by reference in the application notes to § 2B1.6. Accordingly, the district court should not have applied the two-level enhancement for fraudulent use of a foreign passport.

## I. Background

From 2007 to 2009, Zheng worked in a fraudulent-document ring operating in Chicago's Chinatown neighborhood. The group sold fake Chinese passports and Social Security cards from the United States territory of Saipan to customers who wanted to obtain an Illinois driver's license or identification card but lacked legitimate documents verifying their identity.[1] Zheng had been introduced to the ring the year before, when he needed false identifying documents to apply for an Illinois driver's license for himself. In September 2006 he obtained a driver's license using another person's Social Security card and a fake Chinese passport reflecting that person's identifying information.

Zheng was thereafter recruited to join the conspiracy and over a two-year period helped more than 100 customers secure false identifying documents. His role in the conspiracy was to meet with customers, collect cash payment, and gather the information necessary to prepare the false documents. Zheng also transported customers to the office of the Illinois Secretary of State, where they used the falsified documents to fraudulently obtain a driver's license or identification card. Near the end of the conspiracy, Zheng began helping his coconspirators in the manufacturing process, making six to ten fraudulent passports himself before federal authorities shut the ring down.

---

[1] Additional facts are described in *United States v. Wang*, 707 F.3d 911 (7th Cir. 2013), which resolved an earlier appeal in another case stemming from the same conspiracy.

The investigation produced three separate indictments, each with multiple defendants. In a 2011 superseding indictment, Zheng was charged with conspiracy to make or use a false passport and misuse a Social Security number, *see* 18 U.S.C. § 371; falsely using a Social Security number, *see* 42 U.S.C. § 408(a)(7)(B); and aggravated identity theft, *see* 18 U.S.C. § 1028A. He pleaded guilty to the conspiracy and aggravated-identity-theft counts.

Aggravated identity theft is an independent offense but is tied to the commission of an underlying crime of fraud or deceit enumerated in the statute. Specifically, § 1028A(a)(1) provides that anyone who, in connection with certain enumerated felonies, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment for such felony, be sentenced to a term of imprisonment of 2 years." Zheng's conviction for conspiracy to commit passport fraud is one of the listed crimes. The mandatory two-year sentence for aggravated identity theft must run consecutively to the sentence imposed for the predicate offense. § 1028A(a)(1), (b), *implemented by* U.S.S.G. § 2B1.6(a).

Aggravated identity theft thus operates as a kind of statutory sentence enhancement for the predicate crime. This sentence structure raises the possibility that the same offense conduct will have the effect of bumping the defendant's sentence up twice—once in the guidelines calculation for the underlying offense and again through the mandatory consecutive sentence for aggravated identity theft. The Sentencing Commission has promulgated a special rule to avoid the

"double counting" inherent in cases of aggravated identity theft. Application Note 2 to the guideline for aggravated identity theft instructs judges not to apply any specific offense characteristic for the transfer, possession, or use of a "means of identification" when calculating the offense level for the underlying crime. U.S.S.G. § 2B1.6 cmt. n.2.

In Zheng's presentence report, however, the probation officer recommended the application of a two-level enhancement for fraudulent use of a foreign passport under U.S.S.G. § 2L2.1(b)(5)(B). Zheng objected, citing Application Note 2 and arguing that a foreign passport qualifies as a "means of identification" as that term is defined in § 1028(d)(7), which is the relevant definition for purposes of the aggravated-identity-theft guideline. *See* U.S.S.G. § 2B1.6 cmt. n.2 (incorporating the statutory definition by reference). The government countered that a passport is better classified as an "identification document," a separately defined term in the same statute. 18 U.S.C. § 1028(d)(3).

The district court agreed with the government, overruled Zheng's objection, and applied the two-level enhancement for fraudulent use of a foreign passport. Zheng's total offense level was 23, which yielded an advisory guidelines range of 46 to 57 months on the conspiracy count. The judge imposed a below-guidelines sentence of 37 months on that count and tacked on the two-year consecutive term as required under § 1028A, for a total sentence of 61 months.

## II. Discussion

The sole issue on appeal is the district court's application of the two-level enhancement under § 2L2.1(b)(5)(B) for Zheng's fraudulent use of a foreign passport. This issue turns on an interpretation of Application Note 2 to § 2B1.6, the guideline for aggravated identity theft.[2] We review the district court's interpretation of the sentencing guidelines de novo. *United States v. Sutton*, 582 F.3d 781, 783 (7th Cir. 2009).

As we have noted, Application Note 2 is a special guidelines rule against double counting. *See United States v. Vizcarra*, 668 F.3d 516, 519–27 (7th Cir. 2012) (explaining that the guidelines do not contain a general background rule against double counting but instead prohibit double counting only as specifically spelled out in the text). The guideline for aggravated identity theft is straightforward. It implements the statutory command of a two-year consecutive sentence: "If the defendant was convicted of violating 18 U.S.C. § 1028A, the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to that count

---

[2] The parties do not dispute that Application Note 2 is an authoritative part of the guidelines. *See United States v. Vizcarra*, 668 F.3d 516, 520 (7th Cir. 2012) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." (internal quotation marks omitted)); *United States v. Edwards*, 945 F.2d 1387, 1392 (7th Cir. 1991) ("The Sentencing Commission's application notes are contemporaneous explanations of the Guidelines by their authors, entitled to substantial weight." (internal quotation marks omitted) (alteration omitted)).

of conviction." U.S.S.G. § 2B1.6(a); *see also* 18 U.S.C. § 1028A(a)(1) (providing for a mandatory two-year sentence); *id.* § 1028A(b)(2) (providing that the two-year sentence under § 1028A shall not run concurrently with other sentences, with exceptions not relevant here).

Application Note 2 to § 2B1.6 explains that when the defendant is convicted of aggravated identity theft, Chapter Two enhancements do not apply to the predicate offense:

> **Inapplicability of Chapter Two Enhancement.**—If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence [for aggravated identity theft] under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6 cmt. n.2. So when calculating the guidelines range for the underlying crime—here, conspiracy to commit passport fraud[3]—the court may not apply any specific offense

---

[3] Both conspiracy and passport fraud are predicate offenses to aggravated

(continued...)

characteristic for the transfer, possession, or use of a "means of identification." The Sentencing Commission has concluded that the conviction for aggravated identity theft adequately accounts for this offense conduct.

Here, the district court enhanced the offense level for the conspiracy count under § 2L2.1(b)(5)(B), which directs the court to apply a two-level increase if "the defendant fraudulently obtained or used … (B) a foreign passport." *Id.* § 2L2.1(b)(5)(B). The object of the conspiracy was the making and selling of fake Chinese passports (among other false documents) for customers to use to fraudulently obtain Illinois drivers' licenses or identification cards. So the two-level enhancement for fraudulent use of a foreign passport was easily supported by the facts.

But Zheng's conspiracy conviction was the predicate crime for aggravated identity theft, so Application Note 2 knocks the enhancement out. Or at least it does if a foreign passport counts as a "means of identification." Application Note 2 defines "means of identification" by reference to § 1028(d)(7), which states as follows:

> (7) [T]he term "means of identification" means any name or number that may be used, alone or in conjunction with any other

---

[3] (...continued)
identity theft. *See* 18 U.S.C. § 371 (defining conspiracy offense); *id.* § 1543 (defining offense of forgery or false use of passport); *id.* § 1028A(c)(4) (listing § 1028A predicate offenses, including "any provision contained in this chapter").

information, to identify a specific individual, including any—

> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, *government passport number*, employer or taxpayer identification number;

> (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

> (C) unique electronic identification number, address, or routing code; or

> (D) telecommunication identifying information or access device … .

18 U.S.C. § 1028(d)(7) (emphasis added).

This definition is very broad. It primarily refers to intangible identifying information (e.g., name, date of birth, Social Security number, etc.). But it also encompasses physical objects that are embedded with identifying information (e.g., access devices, fingerprints, iris images, other biometrics). *See United States v. Spears*, 729 F.3d 753, 755 (7th Cir. 2013). Passports are physical objects embedded with intangible identifying information. Indeed, in *Spears* we included passports in a list of examples of physical objects that fall under the definition of "means of identification" in § 1028(d)(7). *See id.* ("Although it is possible to 'possess' [identifying] information without committing it to paper, many forms of possession entail

embodiment in an object such as a passport, Social Security card, or alien registration document."). *Spears* held that a counterfeit handgun permit is a "means of identification" as the term is defined in § 1028(d)(7).

Our decision in *Spears* focused on a different interpretive puzzle in § 1028A—namely, whether a defendant who makes a fake document containing a person's identifying information and transfers the counterfeit document *to that person* commits aggravated identity theft. *Id.* at 754–58. We answered that question "no," holding that manufacturing a false means of identification for a customer using the customer's *own* identifying information does not violate § 1028A. *Id.* Still, our discussion of the term "means of identification" in § 1028(d)(7) supports Zheng's position that a passport counts as a "means of identification."

Also relevant here is *United States v. Doss*, which addressed Application Note 2 directly and held that the identifying information embedded in a counterfeit access device qualifies as a "means of identification" for purposes of the double-counting bar in § 2B1.6. 741 F.3d 763, 767 (7th Cir. 2013). But *Doss* was an easy case; the enhancement at issue there applied to trafficking in counterfeit access devices, *see* U.S.S.G. § 2B1.1(b)(11)(B), and access devices are specifically mentioned in the statutory definition of "means of identification," *see* § 1028(d)(7)(D) (listing "telecommunication identifying information or access device"). *Doss*, 741 F.3d at 767 n.7. So without much ado we held that Application Note 2 precluded application of the enhancement and remanded for resentencing. *Id.* at 768.

Neither *Spears* nor *Doss* addressed the specific argument the government raises here. The government argues that a passport falls under the narrower definition of "identification document" in § 1028(d)(3) and thus cannot also be a "means of identification" under § 1028(d)(7). Subsection 1028(d)(3) defines "identification document" as "a document made or issued by or under the authority of the United States Government, a State, … [or] a foreign government … which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." Although a passport may satisfy the broader definition of "means of identification" in subsection (d)(7), the definition of "identification document" seems a closer fit. The government reasons that the two definitions were meant to demarcate mutually exclusive categories: Because passports count as identification documents, they should not also be considered a means of identification.

We see no reason why a passport cannot be both an "identification document" and a "means of identification." The terms overlap, and nothing in the statutory scheme suggests that an identification document cannot also qualify as a means of identification. The broader term is defined by reference to items of identifying information, which may or may not be embedded in an official document such as a passport. That is, the definition of "means of identification" covers intangible identifying information, regardless of form. The term "identification document," in contrast, refers only to tangible documents that serve identification purposes. The two terms appear in a series of statutes falling under the general heading of identity theft and fraud. Just two of these statutes—§ 1028A

(aggravated identity theft, defined as the transfer, possession, or use of a means of identification in connection with an enumerated felony) and § 1028(a)(7) (the transfer, possession, or use of a means of identification in connection with other unlawful activity)—use the broader term, capturing a wide swath of conduct that involves misuse of another person's identifying information.

In contrast, the statutes using the term "identification document" are more targeted and specifically require falsification or misuse of an identification document. If the defendant's conduct meets the narrower definition, the corresponding charging options open to the prosecutor are more numerous; many counterfeit-document crimes use the term "identification document." *See, e.g.*, 18 U.S.C. § 1028(a)(1)–(6), (8) (all relating to misuse of identification documents). It's true, as the government observes, that counterfeiting an official government document may give rise to additional or different harms than misusing an individual item of identifying information. But that's not a reason to read the terms "identification document" and "means of identification" as mutually exclusive. We conclude that a passport is a "means of identification" under the broad definition in § 1028(d)(7).

As almost an afterthought, the government points to an unpublished Ninth Circuit decision to support its position that a passport is not a means of identification. *See United States v. Dehaney*, 455 F. App'x 781 (9th Cir. 2011). The discussion in *Dehaney* was quite brief. Relying on a Ninth Circuit precedent that had distinguished the terms "identification document" and "means of identification," the court summarily concluded

that "a United States passport is not a 'means of identification'" and rejected the defendant's argument that Application Note 2 to § 2B1.6 applied. *Id.* at 783. But the precedent cited by the court—*United States v. Melendrez*, 389 F.3d 829 (9th Cir. 2004)—did not involve a conviction for aggravated identity theft, and so § 2B1.6 was not at issue. We do not find *Dehaney* persuasive.

In short, the point of Application Note 2 is to avoid counting the same offense conduct twice for purposes of sentence enhancement when a conviction for aggravated identity theft is in the mix. The mandatory two-year consecutive sentence under § 1028A already accounts for conduct involving misuse of a means of identification, so the Sentencing Commission instructs judges not to apply Chapter Two enhancements to the predicate offense for the same offense conduct. Because a passport is a means of identification, Application Note 2 to § 2B1.6 precludes application of the two-level enhancement for Zheng's fraudulent use of a foreign passport.

Accordingly, it was error to apply the enhancement. We note in closing that although the district court imposed a below-guidelines sentence on the conspiracy count, the government has not argued that the error in calculating the guidelines range was harmless. *See United States v. Zahursky*, 580 F.3d 515, 527 (7th Cir. 2009) (explaining that the government must establish that a sentencing error was harmless). We therefore VACATE Zheng's sentence and REMAND for resentencing.