# United States Court of Appeals
## For the First Circuit

No. 15-1848

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN NOLTE, a/k/a George France,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise Jefferson Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Elizabeth L. Prevett, Federal Public Defender Office, on brief for appellant.
Robert E. Richardson, Assistant United States Attorney, and Carmen M. Ortiz, United States Attorney, on brief for appellee.

December 20, 2016

**TORRUELLA, Circuit Judge.** A jury convicted Steven Nolte of making false statements in a passport application, in violation of 18 U.S.C. § 1542 (Count I), aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count II), and use of a falsely-obtained Social Security account number to obtain benefits, in violation of 42 U.S.C. § 408(a)(7)(A) (Count III). At sentencing, the district court enhanced by four levels the Sentencing Guidelines range for Nolte's conviction for Count I pursuant to U.S.S.G. § 2L2.2(b)(3)(A) and ultimately sentenced him to twelve months for Counts I and III,[1] and to the mandatory consecutive twenty-four months imprisonment term for his conviction for Count II, resulting in an aggregated sentence of thirty-six months of imprisonment. Nolte challenges the application of the four-level enhancement as to Count I, as well as his conviction for aggravated identity theft. Because we find that the four-level enhancement was correctly applied, and Nolte's argument challenging his conviction for aggravated identity theft is foreclosed by binding circuit precedent, we affirm.

## I. Background

**A. Factual Background**

Nolte was born in 1963 in Arizona, and lived there through approximately 1997. He worked in real estate in Arizona

---

[1] Counts I and III were grouped for sentencing purposes.

during the early 1990s, where he befriended Steve France. Steve France had, in addition to other siblings, a brother named George who passed away in 1966, at the age of four days.

After his time working in real estate, Nolte set up a business for computer consulting named Etlon Communications. Nolte, through Etlon Communications, worked as an information technology consultant to a company named Fulton Homes in the mid-1990s. In 1997, approximately $571,000 was drawn from Fulton Homes' bank account through five checks addressed to Etlon Communications. These checks featured Fulton Homes' president's forged signature. Most of these funds were transferred to a bank located in Costa Rica, to the receipt of Nolte.

On May 13, 1997, Nolte obtained an Arizona driver's license using the name of George France and a birth date in 1966. Nolte maintained this identity for nearly two decades. On May 15, 1997, Nolte used that license to apply for a United States Passport, under the name George France. In that application, he stated that he was born in 1966 in Phoenix, Arizona, and he provided a Social Security number ending in 7622. This Social Security number actually belonged to a different person, who was from Arizona. The United States issued the passport on May 16, 1997. The issuance of this passport was expedited, due to travel plans to San José, Costa Rica.

Shortly afterwards, on May 30, 1997, Nolte -- under the identity of George France -- applied for a replacement passport at the United States embassy in Costa Rica, stating that his passport had been stolen. In the application, he provided a Social Security number that differed by one number -- but that also ended in 7622 -- which actually belonged to a different person, who was from Hawaii. The application also listed 1966 as his year of birth, and was obtained by using the George France Arizona license and by referencing the other, recently-obtained George France passport.

On June 9, 1999, Nolte -- as George France -- submitted an application for a Social Security number, indicating that he had never received one. He listed his birth year as 1966, and identified himself using the May 30, 1997 passport and a birth certificate he had acquired for George France, which had been issued on May 13, 1997. He was subsequently issued a Social Security number for George France, which ended in 8253. On April 19, 2007, Nolte filed for a renewal of the May 30, 1997 George France passport. In the renewal application, he provided the Social Security number for George France ending in 8253. The renewed passport issued on April 30, 2007.

On May 11, 2012, Nolte went to the office of the Boston Passport Agency seeking a replacement passport. He claimed that he had accidentally put his April 30, 2007 passport through the

-4-

washer and dryer, which had damaged it. He completed an application for a replacement in which he again listed his name as George France and provided personal information for George France, including the Social Security number ending in 8253. He provided the Arizona driver's license, the birth certificate, and the damaged 2007 passport as proof of his identity.

The application was approved by the first passport specialist, who dealt with Nolte in person, but required further vetting before the passport was actually issued. During that process, the application was flagged and sent to a fraud prevention manager because the Social Security number used -- the one ending in 8253, issued in 1999 -- had been assigned when the applicant was thirty-three years old, which is an unusually late age for receiving a Social Security number. The fraud prevention manager called Nolte (as George France) and inquired why his Social Security number had been issued so late in his life; he responded that his mother had given her sons the same Social Security number, that he had mistakenly used his brother's Social Security number earlier in life, and that he had applied for a new number after learning of the issue.

Shortly thereafter, special agents in the Department of State began an investigation into the application. During that investigation, on May 22, 2012, Nolte returned to the Boston

Passport Agency to inquire about the status of the replacement passport. While there, two agents advised him of his rights and conducted an interview. As he had listed in the passport application, he told the agents that his name was George France; he was born in Phoenix, Arizona in 1966; both of his parents had passed away; his Social Security number was the one ending in 8253; and other personal details relating to the France family. He provided the agents with the same explanation about his use of varying Social Security numbers that he had given to the fraud prevention specialist -- that he and his brothers had been issued the same Social Security numbers, and that he had used that number until he learned of the mistake after his brother Steve died in 1997. Much of this information was incorrect, however; for example, as testified at trial, the actual George France had two sisters, and his mother, Anna France, was indeed alive.

## B.   Procedural Background

On August 20, 2013, a federal grand jury indicted Nolte on Counts I, II, and III. He was arrested in Las Vegas, Nevada on September 3, 2013, and the case went to trial on March 2, 2015. The evidence presented at trial included fingerprint matches, DNA evidence, and the testimony of two witnesses who knew Nolte from Arizona to show that the defendant was in fact Steven Nolte. On

-6-

March 6, 2015, the jury returned a guilty verdict on all three counts.

The Presentence Investigation Report ("PSR") calculated Nolte's total offense level as 12; this included a four-level enhancement because of the fraudulent use of a United States passport pursuant to U.S.S.G. § 2L2.2(b)(3). Nolte objected to this enhancement, claiming that he did not "use" a passport since the 2007 passport was damaged, and that Application Note 2 to U.S.S.G. § 2B1.6 precluded applying an enhancement to Count I for using a means of identification because he was also charged with a count of aggravated identity theft related to that means of identification. The probation officer rejected this contention and maintained the accuracy of the PSR's Guidelines calculation.

Nolte reiterated his objections in his sentencing memo and at the June 29, 2015 sentencing hearing. The district court rejected these objections at the sentencing hearing, and adopted the base offense level of 12 recommended in the PSR. The district court ruled that Nolte did "use" a passport when applying for the replacement, and that the enhancement did apply because numerous means of identification were used and the reliance on the prior passport could be considered separately. The district court sentenced Nolte to a total sentence of 36 months imprisonment: 12 months for Counts I and III, and 24 months for Count II. His

sentence also included two years of supervised release and a $3,000 fine.  This appeal ensued.

## II.  <u>Discussion</u>

### A. Four-Level Enhancement Under U.S.S.G. § 2L2.2(b)(3)

Nolte contends that the district court's Guidelines calculation was erroneous inasmuch as it applied the four-level enhancement for the use of a United States passport pursuant to U.S.S.G. § 2L2.2(b)(3)(A), even though Application Note 2 to U.S.S.G. § 2B1.6 ("Application Note 2") prohibits application of an enhancement for use of a "means of identification" when the defendant is also convicted of aggravated identity theft.  Nolte argues that the imposition of the enhancement amounts to impermissible double counting.

The government, in contrast, argues that the enhancement is applicable because Application Note 2 prohibits the enhancement only for the use of a "means of identification" and a passport is not a "means of identification," but rather an "identification document."

We review the sentencing court's factfinding for clear error and its construction and application of the Guidelines de novo.  <u>United States</u> v. <u>Souza</u>, 749 F.3d 74, 85 (1st Cir. 2014) (citing <u>United States</u> v. <u>Ihenacho</u>, 716 F.3d 266, 276 (1st Cir. 2013)).  We use conventional methods of statutory construction

-8-

both to determine the meaning the Sentencing Commission intended to give to a Guidelines term, United States v. Damon, 595 F.3d 395, 400 (1st Cir. 2010), and to interpret the meaning of Guidelines commentary, id. at 400 n.3 (citing United States v. Almenas, 553 F.3d 27, 31-32 (1st Cir. 2009)).

Nolte's conviction on Count II for aggravated identity theft had a violation of 18 U.S.C. § 1542 as an underlying offense.[2] The guideline for 18 U.S.C. § 1028A is found in U.S.S.G. § 2B1.6, which provides that the guideline sentence is the statutory two-year term of imprisonment. U.S.S.G. § 2B1.6(a). Application Note 2 states that:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under this guideline accounts for this factor for the underlying offense

---

[2]  Aggravated identity theft is an independent offense but is tied to the commission of an underlying crime of fraud or deceit enumerated in the statute. Specifically, 18 U.S.C. § 1028A provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  18 U.S.C. § 1028A(a)(1).  In turn, subsection (c) establishes that "the term 'felony violation enumerated in subsection (c)' means any offense that is a felony violation of . . . (7) any provision contained in chapter 75 (relating to passports and visas)," id. § 1028A(c), which includes 18 U.S.C. § 1542 (making false statements in a passport application).

of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. 1028(d)(7).

U.S.S.G. § 2B1.6 cmt. n.2 (emphasis added).

In turn, the guideline for an 18 U.S.C. § 1542 violation[3] is found in U.S.S.G. § 2L2.2. It establishes a base offense level of eight, U.S.S.G. § 2L2.2(a), and, in relation to specific offense characteristics, provides for a four-level enhancement "[i]f the defendant fraudulently obtained or used . . . a United States passport." U.S.S.G. § 2L2.2(b)(3)(A).

Because the sentence under U.S.S.G. § 2B1.6 was imposed in conjunction with a sentence for the underlying offense of 18 U.S.C. § 1542, we must ascertain the meaning of the term "means of identification" in Application Note 2 in order to determine

---

[3] 18 U.S.C. § 1542 states, in relevant part,

> Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws . . . [s]hall be fined under this title, imprisoned not more than . . . 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both.

18 U.S.C. § 1542.

whether the four-level enhancement of U.S.S.G. § 2L2.2(b)(3)(A) applies for the 18 U.S.C. § 1542 violation.

We start our inquiry by examining the plain text of the guideline. See United States v. Brown, 500 F.3d 48, 59 (1st Cir. 2007) ("When interpreting a statute, we begin with its text."). Because Application Note 2 states that "'[m]eans of identification' has the meaning given that term in 18 U.S.C. 1028(d)(7)," we turn to that statute.

The statute defines "means of identification" as:

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any--
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
> (B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
> (C) unique electronic identification number, address, or routing code; or
> (D) telecommunication identifying information or access device (as defined in section 1029(e));

18 U.S.C. § 1028(d)(7).[4]

The statute separately defines "identification document" as:

> a document made or issued by or under the authority of the United States Government, a State, political

---

[4] The statute makes clear that this definition applies in "section [1028] and section 1028A." 18 U.S.C. § 1028(d).

-11-

> subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

Id. § 1028(d)(3).

Nolte contends that because a passport contains a means of identification (a passport number), it also qualifies as a "means of identification" and, thus, Application Note 2 precludes application of the enhancement. In support of his proposition, Nolte cites United States v. Zheng, 762 F.3d 605, 610-11 (7th Cir. 2014) (holding that a passport is both an "identification document" and a "means of identification" under § 1028(d)(7) and, accordingly, Application Note 2 precludes application of a two-level enhancement under U.S.S.G. § 2L2.1(b)(5)(B) for defendant's fraudulent use of a foreign passport). The government counters that while a passport number is a "means of identification," a passport itself is not. Rather, the government claims, it constitutes an "identification document," a separately defined term in the same statute and, accordingly, Application Note 2 does not preclude the enhancement. See United States v. Dehaney, 455 F. App'x 781, 783 (9th Cir. 2011) (distinguishing between "means of identification" and "identification documents" and

-12-

holding that "[b]ecause a United States passport is not a 'means of identification,' as defined in the statute," Application Note 2 does not apply (citing <u>United States</u> v. <u>Melendrez</u>, 389 F.3d 829, 833-34 (9th Cir. 2004))).[5]

We believe that the plain language supports the government's argument. We note that 18 U.S.C. § 1028(d) distinguishes between "means of identification" and "identification documents." While it lists a passport number as a means of identification, it does not list a passport itself. And Application Note 2 prohibits applying the four-level enhancement only for the use of a means of identification, not of an identification document. <u>See</u> <u>United States</u> v. <u>Sharapka</u>, 526 F.3d 58, 62 (1st Cir. 2008) (limiting Application Note 2 to its plain language and rejecting the defendant's argument that a two-level enhancement for the possession of "device-making equipment" resulted in impermissible double counting).

---

[5]  In <u>Melendrez</u>, the court cautioned against confusing the term "means of identification" with "identification document." 389 F.3d at 833. It stated that "[a]n identification document is 'a document . . . intended or commonly accepted for the purpose of identification," while "[a] means of identification, in contrast, is the name or number that may often be associated with such a document." <u>Id.</u> (citations omitted). Accordingly, "Social Security cards . . . are identification documents, but the means of identification are the Social Security numbers that [were] placed on the documents." <u>Id.</u> at 833-34. Although <u>Melendrez</u> dealt with Social Security cards and Social Security numbers, instead of passports, the same reasoning applies.

-13-

This distinction does not appear to be unintended or inconsequential, as the statute explicitly contemplates when an "identification document" will also be considered a "means of identification." For instance, the statute specifically states as a "[r]ule of construction" that "[f]or purposes of subsection (a)(7), a single identification document or false identification document that contains 1 or more means of identification shall be construed to be 1 means of identification." 18 U.S.C. § 1028(i). Because the statute specifically limited this rule of construction to subsection (a)(7), we decline Nolte's invitation to further expand its application to subsection (d).

This distinction is not nonsensical, as Nolte contends, because fraudulently obtaining or using a United States passport may give rise to additional or different harms than misusing only a passport number. For instance, someone attempting to enter the country illegally (including a terrorist) would not be able to get into the country with just a passport number, but having the passport itself would increase his or her chances of doing so.

Nolte complains that construing the Guidelines this way would amount to double counting because the underlying offense involved use of a passport. We note, however, that "with regard to the guidelines generally, 'double counting is often perfectly proper.'" United States v. Stella, 591 F.3d 23, 30 n.9 (1st Cir.

-14-

2009) (quoting United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994)).  "Double counting in the sentencing context 'is a phenomenon that is less sinister than the name implies.'"  Lilly, 13 F.3d at 19 (quoting United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993)).[6]  "We believe the [Sentencing] Commission's ready resort to explicitly stated prohibitions against double counting [under certain circumstances of some guidelines] signals that courts should go quite slowly in implying further such prohibitions where none are written."  Id. (citation omitted). Accordingly, we decline Nolte's invitation to expand a prohibition where it is not explicitly stated.[7]  Thus, we conclude that the district court did not err in applying the four-level enhancement in this case.[8]

**B. Aggravated Identity Theft**

Nolte also argues he cannot be guilty of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) because the word

---

[6]  In fact, the default rule is that the same conduct may determine the base offense level and also trigger the cumulative application of enhancements and adjustments unless a specific guideline instructs otherwise.  See U.S.S.G. § 1B1.1 cmt. n.4.

[7]  In light of the circuit split on this issue, the Sentencing Commission could usefully address the situation in due course.

[8]  Because we are able to grasp the meaning of the term "means of identification" from the text of the statute, and it provides the answer to the Guidelines construction, "our 'inquiry ends.'" United States v. Lyons, 740 F.3d 702, 716 (1st Cir. 2014) (quoting United States v. Roberson, 459 F.3d 39, 51 (1st Cir. 2006)).

"person" in the statutory phrase "means of identification of another person" refers only to a living person. He contends that because the means of identification he used referred to George France, a deceased, the evidence was insufficient to convict him. Nolte acknowledges, however, that his argument is foreclosed by our decision in United States v. Jiménez, 507 F.3d 13 (1st Cir. 2007), and he does not argue any exception to the rule of stare decisis, but rather raises his argument in order to preserve it for potential further appellate review. We need not tarry on this issue.

In Jiménez, this Court considered and rejected the essence of Nolte's arguments. There, after examining the statutory text, the surrounding language, and the statute's structure and purpose, we concluded that the term "person" refers to persons both living and dead. Id. at 22.[9] As a panel, "we are bound to follow this circuit's currently controlling precedent." United States v. McPhail, 831 F.3d 1, 10 (1st Cir. 2016) (quoting United States v. Parigian, 824 F.3d 5, 16 (1st Cir. 2016)). That

---

[9]   Other circuits have also concluded that § 1028A covers the use of the identity of both living and deceased persons. See United States v. Zuniga-Arteaga, 681 F.3d 1220, 1225 (11th Cir. 2012); United States v. LaFaive, 618 F.3d 613, 616-17 (7th Cir. 2010); United States v. Maciel-Alcala, 612 F.3d 1092, 1094 (9th Cir. 2010); United States v. Kowal, 527 F.3d 741, 746-47 (8th Cir 2008).

-16-

precedent requires that we reject Nolte's challenge and affirm his conviction for aggravated identity theft.

### III. Conclusion

For the reasons elucidated above, we conclude that the district court did not err in applying the four-level enhancement pursuant to U.S.S.G. § 2L2.2(b)(3)(A). In addition, Nolte's challenge to his conviction of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) fails as the term "person" within the statute covers both living and deceased persons. Thus, his sentence is affirmed.

**AFFIRMED.**